**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **KENTUCKY FUEL CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **SUMMIT ENGINEERING, INC.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

## COMPLAINT

The Plaintiff, Kentucky Fuel Corporation ("Kentucky Fuel"), by and through in house counsel, for its Complaint against Summit Engineering, Inc.("Summit"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Kentucky Fuel is a Delaware corporation, with its principal place of business in Roanoke, Virginia.

2.      Upon information and belief, Summit is a Kentucky corporation, with its principal place of business in Pikeville, Kentucky.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as it involves citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2).  A substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in southwest Virginia.

## FACTUAL ALLEGATIONS

5. On multiple occasions, Summit traveled to at or near Wise, Virginia to meet with representatives of Kentucky Fuel, to market and provide engineering services to Kentucky Fuel.

6. On these occasions, Summit represented to Kentucky Fuel that Summit had the expertise, manpower and skill to perform engineering services which included, but were not limited to obtaining, maintaining and amending the mining permits of Kentucky Fuel.

7. In reliance on the representations and assurances stated by Summit, Kentucky Fuel agreed to engage Summit's services for multiple engineering projects.

8. In Early 2011, Summit and Kentucky Fuel entered into an agreement whereby Summit agreed to design, prepare, submit and obtain what is known as Amendment 1 to Commonwealth of Kentucky Mining Permit Number 898-0775 ("Permit 898-0775"), in exchange for payment from Kentucky Fuel to Summit.

9. Before entering into the agreement referenced in Paragraph 8 above, Employees and agents of Kentucky Fuel made clear to Summit that (a) having Amendment 1 was an intricate aspect of Kentucky Fuel's ability to efficiently conduct coal mining operations at its Beech Creek surface mine operation in that it would increase the mineable tonnage of the operation and it would allow Kentucky Fuel to efficiently dispose of excess spoil from its Beech Creek mining operation, and (b) the approval of this plan was urgent, and needed to be completed as soon as possible in order for Kentucky Fuel to efficiently and timely conduct surface mining operations at its Beech Creek operation. Summit represented to Kentucky Fuel that it could properly submit an application for Amendment 1 to the Commonwealth of Kentucky, that would be timely approved, which, among other things, would increase the mineable tonnage and allow for

Kentucky Fuel to efficiently dispose of spoil from its surface mining operations by dumping the excess into designated valley fills along with their associated drainage structures. Each of (a) and (b) were known to be material terms of the agreement by both Kentucky Fuel and Summit, and Kentucky Fuel would not have entered into the agreement with Summit were it not for Summit's representations that it could properly and efficiently perform its obligations as required by (a) and (b).

10. Upon information and belief, during the same period of time Summit was representing Kentucky Fuel for engineering work at Kentucky Fuel's Beech Creek operation, Summit was also representing a third party mining company for engineering work to be performed at the same subject location of this action.

11. Permit 898-0775 covers what is known as Kentucky Fuel's Beech Creek operation.

12. Amendment 1 is critical to Kentucky Fuel because without it, the life of the Beech Creek operation is diminished substantially and the coal reserves located thereon are effectively valueless to Kentucky Fuel. At the time this agreement was entered into, Summit was aware of the importance of Amendment 1, and that time was the essence of this contract.

13. In reliance on Summit' assurances, Kentucky Fuel contracted with a third party for the sale of the increased coal production that would occur after the completion and approval of Amendment 1.

14. In reliance on Summit' assurances, Kentucky Fuel purchased and/or relocated equipment from other operations to Beech Creek to facilitate the expected coal production from Amendment 1.

15.     Amendment 1 of Permit 898-0775 was approved by the Commonwealth of Kentucky on or about July 26th, 2013.

16.     Summit's work on Amendment 1 did not meet with industry standards commonly recognized in the area of engineering for mining and reclamation projects, nor of those pledged to Kentucky Fuel.

## CLAIMS FOR RELIEF

### COUNT I: NEGLIGENCE

17.     In support of its Claim, Kentucky Fuel Restates the allegations contained in the preceding paragraphs as if fully stated herein

18.     Summit owed a duty to Kentucky Fuel to provide engineering services in the professional manner of like engineers that would allow for Kentucky Fuel to efficiently mine their Beech Creek operation as was represented to Kentucky Fuel by Summit.

19.     Summit breached the duty it owed to Kentucky Fuel, by, *inter alia*, failing to properly plan and submit Amendment 1 to the Commonwealth of Kentucky in a manner that would increase the mineable tonnage and allow for Kentucky Fuel to efficiently dispose of the spoil from its mining operation at Beech Creek.

20.     As a proximate cause of Summit's breach of its duty, Amendment 1 to Permit 898-0775, as approved, does not allow for Kentucky Fuel to mine approximately 1.68 million tons of coal that it otherwise would have been able to mine had Summit not breached its duty to provide adequate engineering services to Kentucky Fuel.

21.     Kentucky fuel has been damaged by Summit's breach in the approximate amount of $28,598,958.39, plus additional amounts to be determined at trial, said amounts reflecting the amount of coal Kentucky Fuel is now unable to produce and sell

Case 2:13-cv-00046-JPJ-PMS   Document 1   Filed 08/19/13   Page 4 of 6   Pageid#: 4

pursuant to its third party contract(s), costs for equipment purchased and/or relocated from other operations in expectation of increased coal production in an amount to be determined at trial, and increased mining costs in an amount to be determined at trial. Furthermore, Summit's breach negatively impacts Kentucky Fuel's anticipated monthly coal production output, which could put other coal orders with third parties in jeopardy, thus, Kentucky Fuel reserves the right to adjust its damages in the event other existing coal orders with third parties are impacted as a result of Summit's breach.

### COUNT II: BREACH OF CONTRACT

22.     In support of its Claim, Kentucky Fuel restates the allegations contained in the preceding paragraphs as if fully stated herein.

23.     Summit has breached the agreement it entered into with Kentucky Fuel, by, *inter alia*, failing to provide an amendment to Permit 898-0775 that would increase mineable tonnage and allow Kentucky Fuel to efficiently dispose of spoil from its Beech Creek mining operation as Summit contracted to do.

24.     Kentucky Fuel has been damaged as a result of the foregoing breach by Summit.

25.     As a result of Summit's breach, Kentucky Fuel has been damaged in the approximate amount of $28,598,958.39, plus additional amounts to be determined at trial, said amounts reflecting the amount of coal Kentucky Fuel is now unable to produce and sell pursuant to its third party contract(s), costs for equipment purchased and/or relocated from other operations in expectation of increased coal production in an amount to be determined at trial, and increased mining costs in an amount to be determined at trial. Furthermore, Summit's breach negatively impacts Kentucky Fuel's anticipated monthly coal production output, which could put other coal orders with third parties in jeopardy,

thus, Kentucky Fuel reserves the right to adjust its damages in the event other existing coal orders with third parties are impacted as a result of Summit's breach.

WHEREFORE, Kentucky Fuel demands compensatory damages in an amount sufficient to compensate it for its damages alleged in Counts I and II above; prejudgment interest; its costs and a reasonable attorney's fee; trial by jury on all issues so triable; and such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Dustin M. Deane_____
Allen W. "A.J." Dudley, Jr., (vsb #44013)
*General Counsel for Litigation*
Dustin M. Deane (vsb #83804)
*Associate General Counsel*
James C. Justice Companies, Inc. and Affiliates
302 S. Jefferson Street
Roanoke, Virginia 24011
Telephone (540) 776-7890
Facsimile (540) 301-5919
*for Plaintiff Kentucky Fuel Corporation*